# EXHIBIT 2

**KLINE & SPECTER, P.C.**

By:   SHANIN SPECTER, ESQUIRE    (Attorney I.D. No.: 40928)
      TOBI L. MILLROOD, ESQUIRE    (Attorney I.D. No.: 77764)
      BRADEN R. LEPISTO, ESQUIRE   (Attorney I.D. No.: 313586)
      SHERRELL L. DANDY, ESQUIRE (Attorney I.D. No.: 309348)

Shanin.Specter@klinespecter.com
Tobi.Millrood@klinespecter.com
Braden.Lepisto@klinespecter.com
Sherrell.Dandy@klinespecter.com
1525 Locust Street
Philadelphia, Pennsylvania 19102
215-772-1000
215-772-1359 (fax)                                      ATTORNEYS FOR PLAINTIFF

*Filed and Attested by the Office of Judicial Records 17 OCT 2024 04:32 pm L. BREWINGTON*

---

| | |
|---|---|
| CARMEN JONES<br>1350 N 10TH STREET<br>APT 305<br>PHILADELPHIA, PA 19122<br><br>*Plaintiff*<br><br>V.<br><br>L'ORÉAL USA, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>L'ORÉAL USA PRODUCTS, INC.<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>SOFT SHEEN-CARSON, LLC<br>10 HUDSON YARDS<br>NEW YORK, NY 10001<br><br>AND<br><br>STRENGTH OF NATURE, LLC<br>64 ROSS ROAD<br>SAVANNAH, GA 31405<br><br>AND | IN THE COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY,<br>PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

---

Case ID: 241002291

GODREJ SON HOLDINGS, INC.
64 ROSS ROAD
SAVANNAH, GA 31405

AND

BEAUTY BELL ENTERPRISE D/B/A
HOUSE OF CHEATHAM, INC. AND
HOUSE OF CHEATHAM LLC
647 MIMOSA BLVD.
ROSWELL, GA 30075

AND

HOUSE OF CHEATHAM, LLC
1445 ROCK MOUNTAIN BLVD.
STONE MOUNTAIN, GA 30083

AND

LUSTER PRODUCTS, INC.
1104 WEST 43RD STREET
CHICAGO, IL 60609

AND

SUNRAY DRUGS, LLC
790 PENLLYN PIKE
SUITE 105
BLUE BELL, PA 19422

AND

CAMSON DRUGS, INC.
142 S. 52ND STREET
PHILADELPHIA, PA 19139

AND

JACK WEISS DRUGS, INC.
7848 OLD YORK ROAD
SUITE 200
ELKINS PARK, PA 19027

AND

Case ID: 241002291

---

NEFF DRUGS 30, LLC
142 S. 52ND STREET
PHILADELPHIA, PA 19139

*Defendants*

---

## NOTICE TO PLEAD

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

### ADVISO

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Case ID: 241002291

## CIVIL ACTION – COMPLAINT

Plaintiff, Carmen Jones, through her undersigned counsel, Kline & Specter, P.C., hereby demands damages from the Defendants in a sum in excess of the local arbitration limits exclusive of interest, costs, and damages for prejudgment delay, upon the cause of action set forth below:

## PARTIES

1.     Plaintiff, Carmen Jones, is an adult individual citizen and resident of Pennsylvania, residing therein at 1350 N. 10th Street, Apt. 305, Philadelphia, PA 19122.

2.     Defendant, L'Oréal USA, Inc., ("L'Oréal") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

3.     Defendant, L'Oréal USA Products, Inc., ("L'Oréal Products") is incorporated in Delaware with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.

4.     Defendant, SoftSheen-Carson, LLC, ("Softsheen") is a limited liability company organized in the state of New York with its principal place of business and headquarters located at 10 Hudson Yards, 347 10th Avenue, New York, New York 10001.  Upon information and belief, SoftSheen-Carson, LLC's members and sole interested parties are L'Oréal USA, Inc. and L'Oréal S.A., L'Oréal's French owned company, with its headquarters and principal place of business located in France.

5.     Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., and SoftSheen-Carson, LLC, will be collectively referred to as "L'Oréal Defendants."

Case ID: 241002291

6.    Defendant Strength of Nature, LLC, ("Strength of Nature") is a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, Georgia 31405.

7.    Defendant Godrej SON Holdings, Inc., ("Godrej") is, a corporation with its principal place of business and headquarters located at 64 Ross Road, Savannah, GA. Upon information and belief, at all times relevant to this action, Godrej SON Holdings, Inc., has been the sole member and interested party of Strength of Nature, LLC.

8.    Defendants Strength of Nature, LLC and Godrej SON Holdings, Inc. will be collectively referred to as "Strength of Nature Defendants."

9.    Defendant Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc. ("Beauty Bell") is a domestic limited liability company organized in Georgia with its principal office located at 647 Mimosa Blvd, Roswell, Georgia 30075. Upon information and belief, Beauty Bell Enterprises, LLC d/b/a House of Cheatham's sole member and interested party is Jay Studdard, who is domiciled in Gorgia.

10.    Defendant House of Cheatham, LLC, ("House of Cheatham") is a limited liability company organized in Georgia with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia. Plaintiff alleges that House of Cheatham, LLC's sole member and interested party is Hollywood Beauty Holdco, LLC, a limited liability company organized in Delaware with its principal office located at 1445 Rock Mountain Boulevard, Stone Mountain, Georgia, 30083.

11.    Defendants Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc and House of Cheatham, LLC, will be collectively referred to as "House of Cheatham Defendants."

Case ID: 241002291

12.     Defendant Luster Products, Inc. ("Luster Products") is an Illinois corporation with its principal place of business and headquarters located at 1104 West 43rd Street, Chicago, IL 60609.

13.     Defendant Sunray Drugs, LLC is a corporation with its principal place of business and headquarters located at 790 Penllyn Pike, Suite 105, Blue Bell, PA 19422.

14.     Defendant Camson Drugs, Inc. is a corporation with its principal place of business and headquarters located at 142 S. 52nd Street, Philadelphia, PA 19139.

15.     Defendant Jack Weiss Drugs, Inc. is a corporation with its principal place of business and headquarters located at 7848 Old York Road, Suite 200, Elkins Park, PA 19097.

16.     Defendant Neff Drugs 30, LLC is a corporation with its principal place of business and headquarters located at 142 S. 52nd Street, Philadelphia, PA 19139.

17.     Upon information and belief, at all times relevant hereto, Defendants Sunray Drugs, LLC, Camson Drugs, Inc., Jack Weiss Drugs, Inc., and Neff Drugs 30, LLC, owned and/or operated Sunray Drugs located at 145 S. 52nd Street, Philadelphia, PA 19139.

18.     Defendants Sunray Drugs, LLC, Camson Drugs, Inc., Jack Weiss Drugs, Inc., and Neff Drugs 30, LLC will be collectively referred to as "Sunray Defendants."

## JURISDICTION

19.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

20.     This Court has original jurisdiction over this civil action.

21.     This Court has personal jurisdiction over the Defendants.

22.     At all times relevant hereto, L'Oréal Defendants, Strength of Nature Defendants, House of Cheatham Defendants, and Defendant Luster Products (hereinafter "Manufacturer

Case ID: 241002291

Defendants") contracted with, entered agreements with, sold, shipped, and distributed hair relaxer products, including those products Plaintiff purchased and applied to her hair, to various companies and stores within the Commonwealth of Pennsylvania, including but not limited to Sunray Defendants.

23.     At all times relevant hereto, Manufacturer Defendants engaged in the business of manufacturing, making, distributing, creating, dispensing, selling, shipping, advertising, transporting, and marketing hair relaxer products which contained dangerous and harmful amounts of endocrine disrupting chemicals and other harmful substances to be sold by Sunray Defendants.

24.     At all times relevant hereto, Sunray Defendants conducted business in the Commonwealth of Pennsylvania by: (1) selling and distributing products and merchandise, including Ultra Precise, Dark & Lovely, Gentle Treatment, Just For Me, Africa's Best, and Luster's Pink Oil (hereinafter "Chemical Hair Relaxer Products") in the Commonwealth of Pennsylvania for the purpose of realizing pecuniary benefit from those sales and distributions; (2) shipping products and merchandise, including the Chemical Hair Relaxer Products, directly into and through the Commonwealth of Pennsylvania; (3) engaging in business in the Commonwealth of Pennsylvania; and/or, (4) owning, using, and/or possessing real property situated in the Commonwealth of Pennsylvania.

25.     At all times relevant hereto, Manufacturer Defendants had, and continues to have, regular and systematic contact with and conducts business in and from the Commonwealth of Pennsylvania, such that it has purposefully availed itself of the laws of the Commonwealth of Pennsylvania and can reasonably expect to both sue and be sued in Pennsylvania.

26.     Additionally, Manufacturer Defendants' presence in the Commonwealth of Pennsylvania satisfies the due process requirements for Pennsylvania courts to exercise

Case ID: 241002291

jurisdiction over it. Additionally, Manufacturer Defendants consented to the exercise of jurisdiction over it by Pennsylvania courts by registering to and conducting business from the Commonwealth of Pennsylvania.

27.     A federal court would not have jurisdiction over this case, as there is no federal question under 28 U.S.C. § 1331 or complete diversity between the parties under 28 U.S.C. § 1332. Therefore, this case is not removable to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

28.     Venue is proper in Philadelphia County for each of the following reasons: (1) each Defendant regularly conducts business in Philadelphia County; (2) Sunray Defendants, as alleged *supra*, have a registered office and/or retail stores in Philadelphia County; (3) one or more Defendants, as alleged *supra*, has a principal place of business in Philadelphia County; (4) the cause of action arose in Philadelphia County; and/or, (5) Philadelphia County is a county where a transaction or occurrence took place out of which the cause of action arose.

29.     The damages Plaintiff seeks, exclusive of interests and costs, exceed the jurisdictional amount requiring arbitration referral. Plaintiff seeks more than $50,000 in damages.

## **FACTUAL BACKGROUND**

30.     At all times material hereto, L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Plaintiff used to chemically straighten her hair:

    a.      Dark & Lovely; and,

    b.      Ultra Precise.

Case ID: 241002291

31.     At all times material hereto, Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the following brands that Plaintiff used to chemically straighten her hair:

a.      Gentle Treatment; and,

b.      Just For Me.

32.     At all times material hereto, House Of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Africa's Best brand that Plaintiff used to chemically straighten her hair.

33.     At all times material hereto, Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold various brands of chemical hair relaxer products that were specifically marketed to black women, including but not limited to the Luster's Pink Oil brand that Plaintiff used to chemically straighten her hair.

34.     Plaintiff developed endometrial cancer as a result of frequent use of chemical hair relaxers manufactured by the Defendants.

## **CHEMICAL HAIR RELAXERS**

35.     Black and brown girls are taught at a young age that to be accepted in society, they must tame and control their natural hair.

36.     This has led black and brown women and girls to temporarily or permanently alter their curly hair strands to make them straight to adhere to western beauty standards.

37.     Traditionally, black women straightened their hair using a heated comb, commonly referred to as the "hot comb" invented by Francois Marcel Gateau.  The hot comb, combined with

Case ID: 241002291

temporary hair straightening and growth products created by Madame C.J. Walker, became popular in the early 1900s. Madame C.J. Walker became the country's first black female millionaire. This financial success showed the world that black haircare, particularly hair straightening products, is a very lucrative business.

38.     In 1909, Garrett A. Morgan invented a hair straightening cream after mixing chemicals to correct friction in the sewing machine when sewing wool.  The G.A. Morgan Refining Cream, which straightened wool, was later used to straighten hair.

39.     In the 1960s, the first-generation hair relaxer was created to chemically straighten curly hair permanently by breaking and restructuring the disulfide bonds. The active ingredient, sodium hydroxide, a lye, irritated the scalp, diminished hair strength, and was difficult to rinse. Additionally, the lye caused the relaxer to have a short shelf life because of the separation of the oil and water in the relaxer cream.

40.     In the 1970s, to remedy the disadvantages of the lye relaxer, hair relaxer manufacturers began marketing no-lye relaxers using calcium hydroxide or guanidine hydroxide as the active ingredients instead of sodium hydroxide.

41.     Home hair relaxer kits were marketed and sold to women who wanted to apply the chemical hair relaxer at home instead of having it professionally applied at a hair salon.

42.     The home hair relaxer kits were a cheaper alternative to professional application at a hair salon.

43.     The home hair relaxer kit typically contains plastic gloves and a wooden spatula for application because the chemicals are too harmful to touch with bare hands. The home hair relaxer kits also include the relaxer cream, a liquid activator mixed with the relaxer cream before application, neutralizing shampoo, and a restorative moisturizing balm.

Case ID: 241002291

44. For first-time application, the relaxer cream is placed on the hair from the root to the end. After letting it sit on the hair for ten to twenty minutes, the relaxer is rinsed out with warm water and then shampooed with a neutralizing shampoo to deactivate the alkalizing chemical process, followed by applying conditioner to raise the pH level and soften the hair. Lastly, a moisturizing treatment is used to restore hydration.

45. Defendants began marketing the new and improved no-lye-based relaxers using two main marketing strategies: 1) marketing directly to black women and 2) portraying the no-lye relaxer as safe.



46. In the 1970s and 1980s, hair relaxer manufacturers used black celebrities such as Debbie Allen and Natalie Cole in their commercial ads to market the no-lye relaxer as a safe way to make curly and coarse hair more manageable.

47. In Dark & Lovely's 1980 hair relaxer commercial, while applying a hair relaxer, dancer and actress Debbie Allen stated, "For me, there is more to Dark & Lovely than just that it doesn't contain lye. Dark & Lovely is such a pleasure. It makes me feel like dancing." While dancing, she further stated, "It relaxes my hair just as well as those lye-based relaxers with a lot

Case ID: 241002291

less burning and irritation, and there is no offensive odor...and it leaves it so soft that I can do anything with it."



48.     For decades, Defendants continued to market chemical hair relaxer products to black women, but in the 1990s, the industry began to target young black girls with the first hair relaxer for girls, "Just for Me" by Soft & Beautiful.

49.     In 1993, the infamous Just for Me commercial premiered featuring LaTavia Robinson, who later joined the famous music group Destiny's Child.  Young girls sang and danced to the song with the lyrics: "Just for Me—the no-lye conditioner relaxing cream," again marketing the relaxer as safe because it did not contain lye.

Case ID: 241002291



50. Other manufacturers followed suit, creating other chemical hair relaxers for young girls, including the PCJ hair relaxer, also introduced in the early 1990s.

51. Young black girls became enamored with the girls depicted on the hair relaxer boxes, believing they could achieve the same look if they used the hair relaxer.



52. It was recently discovered from a "Where Are They Now" interview that several women depicted on the hair relaxer boxes did not have chemically straightened hair and never used the chemical relaxer products.

53. The hair relaxer manufacturing companies spent billions of dollars targeting black women and girls:

Case ID: 241002291








54.     Although the hair relaxer manufacturing companies marketed the no-lye relaxers as safe because they did not contain sodium hydroxide, the Defendant companies failed to warn consumers about the harmful chemicals in the hair relaxers, including endocrine-disrupting chemicals ("EDCs").

**ENDOCRINE DISRUPTING CHEMICALS**

Case ID: 241002291

55.     Endocrine-Disrupting Chemicals disrupt the endocrine system, a network of organs and glands that produce, store, and secrete hormones. The glands, controlled by stimulation from the nervous system and chemical receptors in the blood and hormones, help maintain the body's homeostasis by regulating the functions of organs.

56.     These glands help maintain the body's homeostasis by regulating the functions of the organs in the body, including but not limited to cellular metabolism, reproduction, sexual development, sugar and mineral hemostasis, heart rate, and digestion.

57.     EDCs can disrupt different hormones by mimicking or interfering with a natural hormone, which can trick the cellular hormone receptor into thinking that the EDC is the hormone the cellular hormone receptor responds to.

58.     This can cause the creation of excess hormones or deficient hormones and can cause adverse effects, including causing abnormalities in sex organs, early puberty, endometriosis, and hormonally responsive cancers, among other hormonally related diseases.

59.     A group of EDCs called xenoestrogens mimic estrogen by pretending to be biologically created estrogen. Over time, these estrogen mimickers become difficult to detoxify in the liver.

60.     Chemical hair relaxers contain various types of endocrine disrupting chemicals, including phthalates and parabens.

## Phthalates

61.     Phthalates were developed in the 1920s to make plastics more durable and malleable, but today are used in cosmetics to create color and make fragrances last longer.

62.     Phthalates are used in hair relaxers to make the hair more flexible after applying the product.

Case ID: 241002291

63.     Phthalates interfere with estrogen receptors and contribute to reproductive problems such as early puberty in girls, menopausal symptoms, infertility, metabolic syndrome and thyroid conditions, cognitive disorders, and cancer.

64.     Di-2-ethylheylphtyalate ("DEHP") is a phthalate used in plastics to make them more flexible.  Testing of chemical hair relaxers found the presence of DEHP.

65.     In the Report of Carcinogens, Fifteenth Edition, the U.S. Department of Health and Human Services determined that there is "clear evidence" of carcinogenicity of DEHP in both male and female rats and that it is "reasonably anticipated to be a human carcinogen."

66.     Similarly, the U.S. Environmental Protection Agency classified DEHP as a "B-2; probable human carcinogen" in its Chemical Assessment Summary.

### Parabens

67.     Parabens are a class of chemicals used as preservatives in cosmetic products to prevent the growth of harmful bacteria and mold and therefore preserve the product's shelf life. There are common parabens, including methylparaben, propylparaben, butylparaben, and ethylparaben.

68.     Parabens are EDCs that also bind to estrogen receptors and mimic estrogen, causing estrogen dominance and health conditions such as reproductive issues and hormonal cancers.

69.     A recent study detected three different parabens in hair relaxer kits: methylparaben, ethylparaben, and butylparaben. Testing of hair relaxer kits revealed high concentrations of this parabens.

70.     In February of 2012, an article published in New America Medica authored by Thandisizwe Chimurenga entitled "How Toxic is Black Hair Care?" discussed prior and ongoing research regarding EDCs in black hair care products, and noted that "a team of researchers led by

Case ID: 241002291

Dr. Lauren Wise of Boston University's Sloane Epidemiology Center found strong evidence indicating that Black women's hair relaxer use increases the risk for uterine fibroid tumors by exposing Black women to various chemicals through scalp lesions and burns from the products."

71.    Chimurenga further noted that "May of 2011, Dr. Mary Beth Terry and others authored a study, the findings of which showed that African-American and African-Caribbean women were more likely to be exposed to hormonally-active chemicals in hair products."

72.    An August 2019 study examined tissue samples from tumors of women diagnosed with endometrial cancer.  It concluded that paraben molecules were more frequently detected in endometrial carcinoma tissue samples compared to normal endometrium.

73.    Dr. Terry's study, "Racial/Ethnic Differences in Hormonally-Active Hair Product Use: A Plausible Risk Factor for Health Disparities," published in the Journal of Immigrant Health, found that the African-American and African Caribbean women surveyed used products that contained chemicals—commonly referred to as endocrine-disrupting chemicals (EDCs)—linked to various reproductive and birth defects, breast cancer and heart disease.

74.    Studies have shown that black women have elevated levels of phthalates in their urine compared to white women.  Additionally, a May 2021 study showed higher levels of parabens and phthalates detected in the urine of women diagnosed with endometrial cancer than women without cancer.

75.    In a 2018 study, thirty-five different EDCs were present in three hair relaxer kits, including phthalates, parabens, bisphenol A ("BPA"), cyclosilicates, triclosan, and diethanolamine. Of the chemicals found to be present, 84% were not listed as ingredients on the hair relaxer labels. Each of these individual EDCs is well documented to increase estrogen and cause hormone-sensitive cancers.

Case ID: 241002291

76.     The synergistic effects of the combination of the known EDCs in the hair relaxers and other unknown chemicals hidden under the ingredient title "fragrances" further increase the risk of developing hormonally driven cancers.

77.     Moreover, because there is higher percutaneous absorption of chemicals in the scalp compared with other areas of the skin such as on the forearm, palm, and abdomen, there is an even greater risk of developing cancer from carcinogens placed on the scalp/hair.

78.     Despite decades of studies revealing the harmful effects of EDCs, the presence of EDCs in chemical hair relaxers, and the overwhelming disparity of gynecologic related injuries in black women that are known to be caused by EDC exposure, Defendants continue to produce the chemical hair relaxers without warning of the toxicity to the consumer.

### PLAINTIFF'S HAIR RELAXER USE

79.     Plaintiff, Carmen Jones, consistently and frequently used Hair Relaxers, starting in 1975 through her final use on or around 2008.

80.     For decades, Plaintiff used the Chemical Hair Relaxer Products, which are manufactured and advertised by the named Manufacturer Defendants.

#### L'Oréal Defendants

81.     Plaintiff used different variations of L'Oréal Defendants' Dark & Lovely hair relaxers, including but not limited to Dark and Lovely Beautiful Beginnings No-Mistake Smooth Relaxer.

82.     Plaintiff used different variations of L'Oréal Defendants' Ultra Precise hair relaxers, including but not limited to Ultra Precise No-Lye Conditioning Relaxer.

83.     Plaintiff has reason to believe that L'Oréal Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products

Case ID: 241002291

known to L'Oréal Defendants, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

### Strength of Nature Defendants

84.    Plaintiff used different variations of Strength of Nature Defendants' Gentle Treatment hair relaxers, including but not limited to Gentle Treatment No-Lye Relaxer.

85.    Plaintiff used different variations of Strength of Nature Defendants' Just For Me hair relaxers, including but not limited to Just For Me No-Lye Conditioning Crème Relaxer Kit.

86.    Plaintiff has reason to believe that Strength of Nature Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Strength of Nature Defendants, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

### House of Cheatham Defendants

87.    Plaintiff used different variations of House of Cheatham Defendants' Africa's Best hair relaxers, including but not limited to Originals by Africa's Best Originals Olive Oil Conditioning Relaxer.

88.    Plaintiff has reason to believe that House of Cheatham Defendants developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to House of Cheatham Defendants, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

Case ID: 241002291

<u>Defendant Luster Products</u>

89.     Plaintiff used different variations of Defendant Luster Products' Luster Pink Oil hair relaxers, including but not limited to Luster's Pink Oil Moisturizer No-Lye Conditioning Relaxer.

90.     Plaintiff has reason to believe that Defendant Luster Products developed, tested, assembled, marketed, manufactured, and sold other brands of chemical hair relaxer products known to Defendant Luster Products, but unknown to Plaintiff, that contained endocrine disrupting chemicals.

91.     She reapplied the relaxer to newly grown hair approximately every six weeks at home and at hair salons using home hair relaxer kits until her last application on or around 2008.

92.     Plaintiff purchased hair relaxer home kits from various retailers, including but not limited to Rite Aid, Woolworths, and Sunray Drugs.

93.     Plaintiff purchased multiple hair relaxer home kits from Sunray Drugs between 1975 and 1991, including the Chemical Hair Relaxer Products.

94.     The Chemical Hair Relaxer Products purchased and used by the Plaintiff to apply to her hair contained endocrine disrupting chemicals, including phthalates, parabens, and other carcinogenic chemicals.

95.     Plaintiff has reason to believe that the Ultra Precise, Dark & Lovely, Gentle Treatment, Just For Me, Africa's Best, and Luster's Pink Oil contained:

    a.      phthalates, including but not limited to diethyl phthalate (DEP), bis(2-ethyhexyl) phthalate (DEHP), and benzylbutyl phthalate

    b.      Bisphenol A;

Case ID: 241002291

    c.        cyclosiloxanes, including but not limited to octamethylcycloetrasiloxane (D4), decamethylcyclopentasiloxane (D5), and dodecamethylcyclohexylsiloxane (D6) parabens, including but not limited methyl paraben, ethyl paraben, bis(2-ethylhexyl);

    d.        antimicrobials, including but not limited to o-phenylphenol, triclosan, and triclocarban;

    e.        ethanolamines, including but not limited to menoethanolamine and diethanolamine;

    f.        alkylphenols, including but not limited to 4-t-octylphenol, 4-t-nonylphenol, nonylphenol monoethoxylate, and nonylphenol diethoxylate;

    g.        UV filters including, but not limited to benzophenone, benzophenone-1, benzophenone-2, benzophenone-3, oxtinoxate, and octadimethyl PABA;

    h.        fragrances, including but not limited to benzylcetate, eugenol, hexyl cinnemal, limonene, linalool, methyl eugenol, methyl salicylate, pinene, terpineol, AHTN, bucinal, diphenyl ether, DPMI, HHCB, isobornyl acetate, methyl ionone, musk ketone, musk xylene, and phenethyl alcohol.

96.    The Chemical Hair Relaxer Products purchased and used by the Plaintiff increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

## HAIR RELAXERS LINKED TO UTERINE AND ENDOMETRIAL CANCERS

97.    The uterus comprises two main parts: the endometrium and the myometrium. Cancers in the uterus muscle layer are referred to as uterine sarcoma.

Case ID: 241002291

98.     Endometrial cancer is a carcinoma that begins in the endometrium lining of the uterus.

99.     Endometrial cancer is one of the three most common cancers in females and is the most common form of uterine cancer.

100.    There are two types of endometrial cancers. Type 1 endometrial cancer tumors are classified as endometroid adenocarcinoma and are linked to excess estrogen in the body.

101.    Type 2 endometrial cancer tumors include uterine serous, clear cell, and squamous cell carcinomas.

102.    Type 1 endometrial cancer is far more common than Type 2, and accounts for approximately 90% of diagnosed endometrial cancer.

103.    Type 1 endometrial cancer incidence increased significantly between 1999 and 2006 compared to Type 2 endometrial cancers, which remained relatively stable during those years.

104.    Some endometrial cancers begin with a pre-cancerous condition called endometrial hyperplasia, which practitioners consider an early stage of endometrial cancer.

105.    One of the main risk factors for endometrial and other uterine cancers include changes in the balance of female hormones in the body. Accordingly, exposure to EDCs is a risk factor for developing hormone-sensitive cancers such as endometrial cancer.

106.    Black women are twice as likely to be diagnosed with uterine cancer than white women and have poorer prognoses when diagnosed.

107.     For decades, research has shown that black women are far more likely to develop reproductive cancers and other reproductive diseases.

Case ID: 241002291

108.    Additionally, black women are two to three times more likely to develop uterine leiomyomata, also known as fibroid tumors, than white women.

109.    Endometriosis is an estrogen-dependent reproductive disease that causes growth of the endometrial glands and stroma outside of the uterus, causing chronic inflammation.

110.    Endometriosis is a risk factor for endometrial cancer, and as with other reproductive diseases, it is far more prevalent in black women.

111.    In addition to the research demonstrating the significant disparity between black and white women in the development of reproductive disease, research also establishes that black girls go through puberty and start menstruating earlier than girls of other races.

112.    Scientists from the University of California, San Francisco, and Berkeley conducted a continuing study of over 1,200 girls tracked between 2005 and 2011. They concluded that by age seven, 23% of black girls started to develop breasts, compared with just 10% of white girls.

113.    Researchers have been baffled by the inability to identify why black girls are menstruating so early and why black women are developing reproductive issues at alarming rates.

114.    According to NBC News, approximately 95% of black women reported using chemical hair straightening products, such as hair relaxers. Many of these women also said they began using the products in early childhood, sometimes as young as five or six years old, and continued frequent use through adulthood.

115.    Although there is so much diversity within the black female community, one commonality between generations of black women is using permanent chemical hair relaxers to straighten their hair.

Case ID: 241002291

116.    In October 2022, the results of a groundbreaking study were published in the Journal of the National Cancer Institute by Dr. Che-Jung Chang and others regarding the link between hair relaxer use and the development of uterine cancers.

117.    The study found that women who frequently used hair relaxers were more than twice as likely to develop uterine cancers compared to women who did not use chemical hair relaxers.  Specifically, the study found that 1.64% of women who never used hair relaxer products would develop uterine cancer before age 70.  However, for women who ever used hair relaxers, the risk of uterine cancer increased to 1.80% and drastically increased to 2.55% for women who frequently used hair relaxers.[1]

118.    Among women who never used straighteners in the 12 months prior to baseline, approximately 1.64% were predicted to develop uterine cancer by age 70 years.  The estimated risk was 1.18% (95% CI for risk difference = 0.15% to 2.54%) higher for the women with ever use, and 2.41% (95% CI for risk difference = 0.52% to 4.80%) higher for those with frequent use compared with women who never used hair relaxers.

119.    According to the researchers, "These findings are consistent with prior studies supporting a role of straighteners in increased risk of other female, hormone-related cancers."

120.    The researchers further stated that "Although no differences in the hazard ratios between racial and ethnic groups were observed, the adverse health effects associated with straightener use could be more consequential for African American and/or Black women because of the higher prevalence and frequency of hair product use, younger age of initiating use, and harsher chemical formulations."[2]

---

[1] 4 Che-Jung Chang, et al., Use of Straighteners and Other Hair Products and Incident Uterine Cancer, Journal of the National Cancer Institute, Oct. 17, 2022, https://pubmed.ncbi.nlm.nih.gov/36245087.
[2] Id.

Case ID: 241002291

**PLAINTIFF'S CANCER DIAGNOSIS**

121.    In November of 2007, at the age of forty-eight, Ms. Jones was diagnosed with endometrial adenocarcinoma, FIGO grade 2 endometrial cancer.

122.    Plaintiff's use of the hair relaxers manufactured and sold by the Defendants, increased the risk of harm and/or was a substantial contributing factor to her development of endometrial cancer.

123.    Ms. Jones suffered significant pain as a result of her cancer diagnosis and subsequent hysterectomy.

**DISCOVERY RULE**

124.    Despite knowing that their chemical hair relaxer products contain large amounts of EDCs that are more likely to enter the body when applied through the scalp, the Defendants failed to warn of the potential for the use of their products to cause cancer and reproductive issues.

125.    Plaintiff reserves the right to plead and invoke the discovery rule. Plaintiff's endometrial cancer is a latent injury. Accordingly, under such circumstances, Plaintiff could not have reasonably been expected to know the cause of her endometrial cancer. Plaintiff lacked the salient facts behind the cause of her endometrial cancer, and Plaintiff could not have been aware of the salient facts through reasonable diligence until less than two years before the filings of Plaintiff's action.

126.    Further, Plaintiff did not and could not have known that her injuries were caused by Defendants' conduct in the exercise of reasonable diligence.

127.    The carelessness and recklessness in the acts and omissions of the Defendants, as outlined and averred throughout the entirety of this Complaint, was a factual cause of and/or placed Plaintiff at an increased risk of harm for and/or was a substantial factor in causing and did in fact

Case ID: 241002291

directly and proximately cause the severe, permanent and grievous personal injuries and damages to Plaintiff.

### COUNT I
### STRICT LIABILITY – DESIGN DEFFECT
#### (Plaintiff v. All Defendants)

128.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

129.    At all relevant times, Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and distribution of the Chemical Hair Relaxer Products in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

130.    Plaintiff used the Chemical Hair Relaxer Products frequently and consistently.

131.    Defendants marketed and advertised the Chemical Hair Relaxer Products as a safe product for use by consumers, specifically to black women and women of color, including Plaintiff, despite knowing that they contained EDCs and other harmful chemicals.

132.    At all relevant times, the Chemical Hair Relaxer Products reached their intended consumers, including Plaintiff, without substantial change in the condition in which the Defendants designed, produced, manufactured, sold, distributed, labeled, and marketed them.

133.    Manufacturer Defendants had a duty to create the Chemical Hair Relaxer Products in a way that was not unreasonably dangerous for their normal, intended, or anticipated use.

134.    Sunray Defendants had a duty to ensure that the Chemical Hair Relaxer Products were not defective and safe for their intended use before selling said products to consumers, such as Carmen Jones.

Case ID: 241002291

135. Defendants' Chemical Hair Relaxer Products were defective as they were formulated, designed, and manufactured with carcinogens.

136. The Defendants' Chemical Hair Relaxer Products were defective because their carcinogenic properties made them unreasonably dangerous in that they were dangerous to an extent beyond that which an ordinary consumer, such as the Plaintiff, would contemplate.

137. Further, the magnitude of the danger associated with use of the Chemical Hair Relaxer Products outweighs the utility of these products.

138. The dangers of the Chemical Hair Relaxer Products were unknown to the ordinary consumer.

139. Plaintiff did not know of these dangers. If she would have known, these dangers would have been unacceptable to her, and she would not have used the Chemical Hair Relaxer Products.

140. Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

141. At the time of Plaintiff's exposure, the Chemical Hair Relaxer Products were being used in a normal, intended, or anticipated manner, as a chemical hair straightener product.

142. Plaintiff used the Chemical Hair Relaxer Products without knowledge of their dangerous characteristics, specifically the carcinogenic risks associated with use of the products.

143. The foreseeable risks associated with use of the Chemical Hair Relaxer Products exceeded the alleged benefits associated with their design and formulation.

Case ID: 241002291

144.     Defects in Defendants' Chemical Hair Relaxer Products increased the risk, and were a producing cause, proximate cause, and substantial factor in the development of Plaintiff's cancer.

145.     As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.     Economic losses, including medical care and lost earnings; and,

      b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

**COUNT II**
**STRICT LIABILITY – FAILURE TO WARN**
**(Plaintiff v. All Defendants)**

146.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

147.     Plaintiff brings this strict liability claim against Defendants for failure to warn about the toxic carcinogenic chemicals in their hair relaxer products.

148.     At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products, which are defective and unreasonably dangerous to its consumers, including

Case ID: 241002291

Plaintiff because they do not contain adequate warnings or instructions regarding the dangerous carcinogenic chemicals contained in the relaxer products.

149.    The Defendants had a duty to warn of the risks associated with using their hair relaxer products.

150.    Defendants knew, or should have known, of the unreasonable risks of harm associated with the use of their chemical hair relaxer products, namely their unreasonably dangerous and carcinogenic properties and their propensity to cause cancer.

151.    However, Defendants purposefully marketed their no-lye hair relaxer products as safe because they did not contain "lye" or sodium hydroxide but failed to warn consumers about the carcinogenic endocrine-disrupting chemicals in the hair relaxers.

152.    Defendants disseminated information that was inaccurate, false, and misleading and that failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries associated with use and frequent use of the Chemical Hair Relaxer Products; and continued to promote the efficacy of the relaxers, even after they knew or should have known of the unreasonable risks from use; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of use of the relaxers.

153.    Defendants failed to exercise reasonable care to warn of the dangerous carcinogenic risks associated with the use of its hair relaxers.

154.    Plaintiff reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

Case ID: 241002291

155.    Had Defendants properly disclosed the risks associated with use of their chemical hair relaxers, Plaintiff could have chosen not to use the chemical hair relaxer and avoid the risk of developing cancer from exposure to the hair relaxing chemicals.

156.    As a result of the absence of warning or instruction by Defendants regarding the significant health-and-safety risks associated with the use of their hair relaxers, Plaintiff was unaware that the Defendants' hair relaxers were unreasonably dangerous and had carcinogenic properties, since such information was not known to the general public.

157.    Defendants' failure to warn regarding the dangers associated with use of the Chemical Hair Relaxer Products increased the risk, and was a producing cause, proximate cause, and substantial factor in the development of Plaintiff's cancer.

158.    As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

  a.    Economic losses, including medical care and lost earnings; and

  b.    Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

**COUNT III**
**NEGLIGENCE**
**(Plaintiff v. Manufacturer Defendants)**

Case ID: 241002291

159.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

160.    At all relevant times, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and/or promoting the Chemical Hair Relaxer Products.

161.    Plaintiff used the Chemical Hair Relaxer Products.

162.    Defendants had a duty to exercise reasonable care in the research, design, manufacturing, packaging, marketing, advertisement, supply, promotion, sale, and distribution of the Chemical Hair Relaxer Products, including a duty to assure that the products would not cause users to suffer unreasonable dangerous side effects, including developing cancer.

163.    Defendants had a duty to provide true and accurate information and warnings concerning the risks of using the Chemical Hair Relaxer Products.

164.    Defendants failed to exercise reasonable care in that they knew, or should have known, of the unreasonable risks of harm associated with the use of the Chemical Hair Relaxer Products and the propensity for the Hair Relaxers to cause cancer.

165.    Defendants also knew, or in the exercise of reasonable care, should have known, that consumers and users of the Chemical Hair Relaxer Products were unaware of the carcinogenic risks associated with use of the product.

166.    Defendants' negligence includes, but is not limited to, the following acts and/or omissions:

        a.    Failing to sufficiently test the Chemical Hair Relaxer Products to determine whether they were safe for their intended use;

Case ID: 241002291

b.       Failing to sufficiently test the Chemical Hair Relaxer Products to determine their carcinogenic properties after learning that their formulations could be carcinogenic;

c.       Marketing, advertising, and recommending the use of the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

d.       Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

e.       Failing to disclose the risk of serious harm associated with use the Chemical Hair Relaxer Products;

f.       Failing to provide adequate instructions, guidelines, and safety precautions to protect the health of those persons whom Defendants could reasonably foresee would use the Chemical Hair Relaxer Products;

g.       Failing to use reasonable and prudent care in the design, development, and manufacturing of the Chemical Hair Relaxer Products, so as to avoid the risk of serious harm associated with use;

h.       Failing to sufficiently test the "inert" ingredients and/or adjuvants, including the chemicals classified as fragrances contained within the Chemical Hair Relaxer Products, and the propensity of these ingredients to render the relaxers toxic or to increase the toxicity of the relaxers;

i.       Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of exposures to the

Case ID: 241002291

Chemical Hair Relaxer Products, such as side effects of exposure to endocrine-disrupting chemicals;

j.    Failing to disclose the risk of serious harm associated with use of endocrine-disrupting chemicals either alone or when included the Chemical Hair Relaxer Products; and,

k.    Marketing, advertising, and recommending the Chemical Hair Relaxer Products without sufficient knowledge as to their dangerous propensities;

l.    Representing that the Chemical Hair Relaxer Products were safe for their intended use when they were not;

m.    Failing to disclose the risk of serious harm associated with use of Chemical Hair Relaxer Products;

n.    Representing that the Chemical Hair Relaxer Products were safe, specifically because they did not contain "Lye", sodium hydroxide, for their intended use when they were not; and

o.    Continuing to manufacture and sell the Chemical Hair Relaxer Products, with the knowledge that the relaxers were unreasonably safe and dangerous.

167.    It was reasonably foreseeable that consumers, including Plaintiff, would suffer injury and possibly die as a result of Defendants' failure to exercise reasonable care in the manufacturing, marketing, promotion, labeling, distribution, and sale of the Chemical Hair Relaxer Products.

168.    Defendants' negligent decisions to market and distribute the Chemical Hair Relaxer Products increased the risk of harm, and was a producing cause, proximate cause, and substantial factor of the development of Plaintiff's cancer.

Case ID: 241002291

169.     As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

      a.     Economic losses, including medical care and lost earnings; and,

      b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES
### (Plaintiff v. All Defendants)

170.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

171.     At all relevant times, Manufacturer Defendants were engaged in the business of manufacturing, formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing the Chemical Hair Relaxer Products that Plaintiff used into the stream of commerce.

172.     At the time Manufacturer and Sunray Defendants, marketed, sold, and distributed their Chemical Hair Relaxer Products for use by Plaintiff, Defendants knew of their intended use and implicitly warranted that the products were of merchantable quality and safe and fit for the use for which they were intended, specifically to chemically straighten hair.

Case ID: 241002291

173. Before the time of Plaintiff's use of the Chemical Hair Relaxer Products, Defendants impliedly warranted to consumers, including Plaintiff, that their relaxers were of merchantable quality and safe and fit for the use for which they were intended; specifically, to chemically straighten hair.

174. Defendants, however, failed to disclose that the Chemical Hair Relaxer Products have dangerous propensities when used as intended and that the use of the relaxers carry an increased risk of developing severe injuries, including Plaintiff's cancer.

175. Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of Defendants, and upon their implied warranties that their Chemical Hair Relaxer Products were of merchantable quality and fit for their intended purpose or use.

176. Manufacturer Defendants' Chemical Hair Relaxer Products were expected to reach, and did in fact reach, consumers and/or users, including Plaintiff, without substantial change in the condition in which they were manufactured and by Manufacturer Defendants and sold by Sunray Defendants.

177. At all relevant times to this litigation, Defendants were aware that consumers and users of their Chemical Hair Relaxer Products, including Plaintiff, would use the products as marketed; therefore, Plaintiff was a foreseeable user of the Chemical Hair Relaxer Products.

178. Defendants intended that their Chemical Hair Relaxer Products relaxers be used in the manner in which Plaintiff was exposed, and Defendants implicitly warranted their product to be of merchantable quality, safe, and fit for this use, despite the fact that the relaxers were not adequately tested and/or researched.

Case ID: 241002291

179.     In reliance on Defendants' implied warranty, Plaintiff used the Chemical Hair Relaxer Products as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by Manufacturer and Sunray Defendants.

180.     Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with the Chemical Hair Relaxer Products.

181.     Defendants breached their implied warranty to Plaintiff in that the Chemical Hair Relaxer Products were not of merchantable quality, safe, or fit for their intended use, an/or adequately tested.

182.     Defendants' Chemical Hair Relaxer Products have dangerous propensities when used as intended and anticipated and can cause serious injuries, including the cancer Plaintiff sustained.

183.     The harm caused by Defendants' Chemical Hair Relaxer Products far outweighed their benefits, rendering the products more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products.

184.     As a direct and proximate result of Defendants' wrongful acts and omissions Plaintiff has suffered severe and permanent physical and emotional injuries.

185.     As a result of the Defendants' reckless and conscious disregard for the health and safety of consumers of their hair relaxer products, Plaintiff sustained the following damages as a foreseeable, direct, and proximate result of Defendants' acts and omissions:

a.     Economic losses, including medical care and lost earnings; and

b.     Noneconomic losses, including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment of life, impairment of quality of life, past and future.

Case ID: 241002291

WHEREFORE, Plaintiff respectfully demands judgment in her favor and against Defendants, in an amount in excess of the applicable arbitration limits, including interest, costs of suit, delay damages, compensatory damages, punitive damages, and such other relief as this Honorable Court may deem appropriate.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By: _____
SHANIN SPECTER, ESQUIRE
TOBI L. MILLROOD, ESQUIRE
BRADEN R. LEPISTO, ESQUIRE
SHERRELL L. DANDY, ESQUIRE
*Attorneys for Plaintiffs*

Dated: <u>October 17, 2024</u>

Case ID: 241002291

**VERIFICATION**

I, Carmen Jones, hereby verify that I am the Plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

Date: 10/17/2024

_____
Carmen Jones, Plaintiff